LATTA v. The HERMITAGE. See Case No. 6,410.

———

## Case No. 8,116.
### LATTA v. SHAWK.
[1 Fish. Pat. Cas. 465; 1 Bond, 259.] [1]
Circuit Court, S. D. Ohio. March, 1859.

PATENTS—STEAM GENERATORS — COMBINATION OF ELEMENTS — ABANDONED AND UNSUCCESSFUL MACHINE—IDENTITY— PLEADING — GENERAL ISSUE—SPECIAL PLEAS.

1. The defendant plead the general issue, and gave notice under section 15 of the act of July 4, 1836 [5 Stat. 123], attacking the novelty of plaintiff's patent. He also filed special pleas, averring prior use and invention, abandonment, etc. Upon motion the special pleas were stricken out.

2. A notice that a prior machine was used at "Cincinnati," "Covington," "Pittsburg," "Wayne county, Indiana," etc., is not sufficiently specific, and does not lay the foundation for the introduction of proof.
[Cited in Smith v. Frazer, Case No. 13,048.]

3. All exclusive rights in the nature of patents are created, and must be controlled by statutory provisions, and it must appear that all the essen-

tial requisites of the law have been complied with.

4. It is no defense, in an action for the infringement of a combination, to show that the separate elements are old: the proof must go to the novelty of the whole combination as a unit.
[Cited in Rhodes v. Lincoln Press-Drill Co., 64 Fed. 219.]

5. Experiments made by the patentee with an abandoned and unsuccessful machine, invented by another, are no evidence of the want of novelty in an invention subsequently reduced to practice.

6. It is familiar law that there is no infringement of a patent for a combination, unless the defendant uses all the parts of which that combination is composed. But there is another kind of combination to which this doctrine does not apply, and that is where the combination is of old and new parts of a machine. In such a case, the defendant infringes if he takes the new part only.
[Cited in Rowell v. Lindsay, 6 Fed. 293.]

7. On the question of identity, the law regards substance and not form, and the real question is, whether the machine used by the defendants is in principle the same as that patented to the plaintiff.

8. By the term "principle" of a new machine we understand its mode or manner of operation, and hence there may be two structures widely different in appearance or dimensions, which are yet identical in principle.

This was an action on the case tried before Judge LEAVITT and a jury, to recover damages for the infringement of letters patent [No. 12,682] granted to the plaintiff [Alexander B. Latta] April 10, 1855, for an "improvement in steam generators." The invention consisted of a boiler formed of a coil, or series of continuous tubes, into which the water was introduced by means of a hand pump, as soon as the fires were lighted, so that water might be thrown upon hot pipes, and be instantaneously converted into steam. To ascertain and regulate the quantity of water forced into the boiler, the feeding apparatus was provided with "an open water box" to enable the engineer to see the water in its passage from the pump to the boiler. The defendant [Abel Shawk] used the coiled tubular boiler, and the hand pump, and introduced the water at substantially the same time as the plaintiff, but he used no "open water box." There was a check valve in his supply pipe, by the movements of which the engineer could hear the water as it passed into the tubes, and could thus regulate its supply. The claims of Latta's patent were as follows: "1st. Combining a steam generator or boiler, consisting of a coil of tube, with a furnace, in such a manner that the flame, or products of combustion, shall come in immediate contact with said coil, when this coil is combined with a feed apparatus and gauges, which will enable the engineer to inspect constantly the supply of water, see that it is not interrupted, test its sufficiency, and regulate it at pleasure, according to the varying demands of the boiler, or close the dampers, if the feed should be interrupted, substantially as described. 2d. While confining the admission of water to the receiving end of a coiled

[1] [Reported by Samuel S. Fisher, Esq., reprinted in 1 Bond, 259, and here republished by permission.]

tube boiler, limiting the quantity therein, and the supply thereof, to the quantity demanded for immediate conversion into steam, for the purpose of avoiding the weight of a large quantity of water; producing the steam promptly, saving fuel, and preventing the water from being thrown out of the tubes by the steam formed in the lower part thereof substantially as described. 3d. Causing the discharging end of a coiled tube generator to communicate with and discharge itself into the water-jacket, while all other communication of said coil with said water-jacket is avoided, as described." The defendant had given notice under section 15 of the act of July 4, 1836, attacking the novelty of the plaintiff's patent. He also filed seven special pleas averring prior invention, use, abandonment, etc. The plaintiff claimed that where notice was given under the general issue, special pleas could not be filed, and that in any event, such pleas must be filed thirty days before trial. He therefore moved to strike them out, referring to Wilder v. Gayler [Case No. 17,649].

THE COURT (LEAVITT, District Judge) granted the motion, and the special pleas were stricken out.

At a later stage of the cause, the defendant attempted to offer proof, under his notice, of a prior use of the thing patented, at Cincinnati and other places. The defendant had given notice that he would prove that such prior use was known to Edward Shields, John Whetstone, etc., of Cincinnati, and that the machines, of which they had knowledge, were used at Cincinnati, Covington, Newport, Pittsburg, Philadelphia, and Wayne county, Indiana. The plaintiff objected to the proof, referring to Silsby v. Foote, 14 How. [55 U. S.] 218, on the ground that the notice was not sufficiently specific; and that it should have specified the street or factory, where the structure which was claimed to be the same as that patented was used, or, that the name of the owner or person using it should have been given; that "Cincinnati," "Pittsburg," etc., was not a sufficient compliance with section 15 of the act of July 4, 1836, which requires the defendant to state in his notice of special matter "the names and places of residence of those whom he intends to prove to have possessed a prior knowledge of the thing, and where the same had been used."

THE COURT (LEAVITT, District Judge) sustained the objection, and refused to receive any evidence of prior use by the persons, or at the place named in the notice.

A. Taft, A. F. Perry, G. M. Lee, and S. S. Fisher, for plaintiff.

C. D. Coffin, for defendant.

LEAVITT, District Judge (charging jury). I do not regard it as a matter of regret that so much time has been occupied in the investigation of this case. The character of the invention, the principles involved, and its importance to the parties, demand that it should be thoroughly examined. My purpose is to state briefly the points of law, and leave you, as it is your province, to pass upon the facts. These matters of fact are neither numerous nor complicated, and I apprehend you will have no difficulty in applying the law to them. The validity of the patent as a patent for a combination, is not directly impeached by the defendant, but it is, nevertheless, the duty of the court to declare whether or not it is valid upon its face. All exclusive rights in the nature of patents are created, and must be controlled by statutory provisions, and, therefore, it must appear that all the essential requisites of the law have been complied with. In deciding this question, we must look to the patent, specification, and drawings, and these are to be examined, and construed in a liberal spirit. It is sometimes said that all patents are monopolies, grants of exclusive privileges which ought not to be maintained. I have only to remark that this view is not to be countenanced; that the patent should be construed liberally, and the patentee should be protected in all rights which fairly belong to him.

The patent in controversy, in this case, is not for a new machine, but for the improvement of an old one. The patentee claims that, by a combination of old machinery, he has succeeded in producing a new and useful result. This combination is undoubtedly patentable. As to its novelty, it is always presumed, from the patent itself, that the invention is new, and if a party sued for infringement would avail himself of the fact of a want of such novelty, it is incumbent upon him to prove it, by giving a proper notice to the plaintiff to prevent surprise at the trial.

This defense is not relied upon in the present action, and I may here remark that if it were, it would be no defense, in an action for the infringement of a combination to show that the separate elements are old; the proof must go to the novelty of the whole combination as a unit. In the present case no such proof is offered. Nor is the utility of this invention controverted. Whatever else may be said of it, there seems no possibility that the usefulness of this improvement could have been successfully impeached. So far as it relates to the steam fire-engine, its greatest characteristic is that steam is applied in the least possible time to the extinguishment of fire. The patentee calls it an "instantaneous tubular steam generator," and its efficiency is well known and has been well tested. Whatever may be the result of the present action, it can in no way detract from the merit of Alexander B. Latta as an inventor, and there can be no doubt that in all time to come, this invention will secure for him the character of a public benefactor.

The question of infringement is the material issue in the present case. In this the burden of proof is on the plaintiff; he is bound to show that his exclusive privilege has been invaded. It appears that in 1842, a patent was granted to a man named Lesh and others, for an improvement in a coiled tubular boiler. Experiments were tried by the patentee in the presence of Mr. Latta, and with his assistance, by which it was clearly proved that the boiler would not answer the purpose for which it was designed, and it was entirely abandoned. The knowledge which Latta thus obtained of the Lesh boiler is no evidence of a want of novelty in the invention for which he subsequently obtained a patent.

It is not unreasonable to suppose that, in the interval between 1842 and 1852, his mind was occupied with the subject of so perfecting this tubular boiler as to make it effective. In 1852 he filed his caveat—describing his ideas upon this point, so far as then matured. In 1853 he filed his first application for a patent for a number of improvements specified therein, among which were those now in controversy. The defendant also procured a patent for an improvement somewhat similar, in 1853. This is prior in date to Latta's patent, but it has no priority over it, for the invention dates from the filing of the caveat in 1852.

In the winter of 1854, 1855, the defendant, Abel Shawk, constructed an engine called "Young America," which, it is claimed, contained the improvements patented to Latta, and therefore infringed his patent. This engine was publicly exhibited at Columbus, and other places, and was subsequently sold in Philadelphia for $9,500.

I have already remarked that the plaintiff's patent is for a combination, and it is a familiar law that there is no infringement unless the defendant uses all the parts of which that combination is composed. There is another kind of combination to which this doctrine does not apply, and that is where the combination is of old and new parts of a machine. In such a case, the defendant infringes if he takes the new part only. But that is not this case. The defendant here insists that as the plaintiff has combined old things only, and as there are parts set forth in the specification which he does not use, he therefore does not infringe. It is also claimed that there are distinctions and substantial differences between the two, even in parts common to both. This question of the identity of the two machines is a question for the jury, and must turn upon the facts in evidence; though it is for the court to say what is identity in point of law. Upon the question of fact, the evidence usually consists of the models and the testimony of scientific and practical experts. It often happens that there is not that practical or scientific knowledge of mechanics in the court or jury, which will enable them to determine, without assistance, the question of identity. It is, therefore, the established practice, in cases of this kind, to call experts, who shall give their opinion of the identity of the structures, and this opinion, when free from bias or improper motive, is entitled to consideration.

On the question of identity, the law regards substance and not form, and the real question is, whether the machine used by the defendant is in principle the same as that patented to the plaintiff. It would be a reproach to the law if a mere colorable change could deprive an inventor of the merit of his invention. By the term "principle of a machine." we understand its mode or manner of operation, and hence there may be two structures widely different in appearance or dimensions, and yet identically the same in principle.

This is the question presented to the jury in this case. There would seem to be some diversity of opinion among the witnesses examined. Three, called by the plaintiff, say that the principles of the two machines are identical, and eight or ten examined by the defendant, regard them as entirely different. I do not now propose a critical analysis of the specification or claims of the patent. They are full and minute, and seem to have been carefully drawn. After describing his machine with great particularity, the patentee sums up by claiming such parts as he desires to be covered by his patent.

It is insisted, by the counsel for the plaintiff, that the claims are for three distinct and independent combinations, and while it it undoubtedly probable that this would be a fair construction, yet it is clear that the claim for what is called the "feed apparatus," is so blended in the first and second claims that it is a part of both. In this apparatus is clearly included an "open vessel." so as to enable the engineer to see the water going in, though the inventor adds that its place may be supplied by anything that will give motion to some mechanical contrivance. In other parts of the specification there are expressions showing clearly that the inventor attached great importance to an open water-box, and in his suggestion respecting a substitute, nothing specific or which supersedes the use of this vessel is mentioned. All of the experts say that this open vessel is necessary to the successful operation of the plaintiff's combination.

It is in proof that the defendant has not used this water-box, but it is claimed that he uses a check-valve, which is a mechanical equivalent for it. This, then, is the point: whether the omission of this thing by the defendant does or does not screen him from the charge of infringement? The jury have, doubtless, distinctly in their minds all the evidence, and will judge for themselves. I could have gone further into the consideration of the specification of the plaintiff, but after the full and able arguments of counsel

on both sides, it seems unnecessary to do so. The jury can not mistake the question: What is to be the effect on the merits of this controversy, of the omission of the element of the open water-box? Is it an essential element? The defendant can not evade this patent by not using a part proved not to be material to the successful working of the plaintiff's combination; and if the jury are satisfied that the water-vessel is not an essential or material element of the invention, and that the invention can be carried into effect without it as well as with it, then they will find a verdict for the plaintiff. If, on the other hand, they find that it is an essential part of the patented machine, and that no mechanical equivalent is used as a substitute for it, then they will find for the defendant.

If you find that the defendant has infringed, it is for you to say to what damages the plaintiff is entitled. It is a rule, well settled, that the damages, in such a case as the present, will be the amount of profits that the defendant has made. The case is committed to the jury.

The jury found a verdict for the plaintiff, assessing the damages at $5.